**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RODNEY LABORDE,** | : | **Civil No. 3:16-CV-769** |
| | : | |
| **Plaintiff** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MOUNT AIRY CASINO,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

This is an employment dispute between the plaintiff, Rodney Laborde, and his former employer, the Mount Airy Casino.[1]  Laborde worked on the casino floor from June 14, 2010, until August 14, 2012, when he was terminated shortly after Mount Airy determined that Laborde had allowed a patron to place bets on a roulette table in excess of the table maximum, leading to an unnecessary confrontation and resulting in the casino owing $3,900 more than it otherwise would have paid.

Laborde does not appear to dispute that he violated a casino rule in allowing the excessive betting.   Nevertheless, he claims that the real reason for his

---

[1]   The defendant notes that its actual name is Mount Airy #1.  Laborde refers to his former employer as the Mount Airy Casino and for simplicity it will be referred to as "Mount Airy" or "the casino."

termination is that he suffered from a number of disabilities, including some medical matters for which he had recently sought and taken leave to address pursuant to the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.* Laborde claims that in terminating his employment, Mount Airy discriminated against him in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. §§ 951 *et seq.*, and retaliated against him for having taken FMLA-qualifying leave.

Mount Airy has moved to dismiss the amended complaint, arguing that it fails to state a claim upon which relief may be granted. The motion is fully briefed and has been referred to the undersigned for preparation of a report and recommendation. For the reasons that follow, it will be recommended that the motion to dismiss be denied so that the plaintiff's claims of discrimination and retaliation may be tested through discovery.

## II.   <u>BACKGROUND</u>

The background to this report and recommendation is taken from the well-pleaded factual allegations set forth in the amended complaint, which are accepted as true for purposes of this report only.

The plaintiff, Rodney Laborde, is a 59 year-old resident of Scott Township, Lackawanna County, Pennsylvania. On June 14, 2010, Laborde was hired to work as a floor supervisor at the Mount Airy Casino in Mt. Pocono, Pennsylvania. He

2

worked in the Casino Table Games Department, supervised by John Collins. The plaintiff alleges that his employment history was positive, and that he received relatively high marks on his performance evaluations, including a rating of 3.7 out of 4 in his final annual performance evaluation on July 24, 2012.

Shortly thereafter, on August 10, 2012, the plaintiff received a written warning for an incident that occurred at the casino on August 9. On that day, the plaintiff avers that he authorized a patron to make a bet on a table game, which the defendant found resulted in "unnecessary negative interactions" with the patron. (Am. Comp. ¶ 10.) The casino found not only that there was a negative interaction with a customer, and a violation of table rules, but that the plaintiff's allowance of an overbet on a roulette table cost the casino $3,900 in an overpayment to the patron. Consequently, the casino suspended the plaintiff's employment on August 14, 2012, and terminated his employment on August 16, 2012, "allegedly based upon the aforementioned incident [involving the patron and overbetting] and overall unsatisfactory performance." (*Id.* ¶¶ 12-13.)

The plaintiff claims that shortly before his termination, during June and July, 2012, he sought and took FMLA-qualifying leave from work. Additionally, the plaintiff submitted a claim for disability coverage with the Guardian Life Insurance Company on July 27, 2012. It appears that this claim was based, in part, on serious health problems relating to chronic back pain due to disk displacement and

spondylolisthesis, as well as gout, which inhibited the plaintiff's ability to stand. (*Id.* ¶ 14(a)-(f).)   In addition, the plaintiff claimed to be suffering from some mental-health challenges relating to the death of his father, and some unidentified problems that his son was having with "some situations." (*Id.* ¶ 14(j).)   The plaintiff alleges that he was granted unemployment benefits following his termination, which were upheld over the defendant's opposition.

The plaintiff claims that the casino's head of human resources was made aware in February 2012, that the plaintiff suffered from periods of depression, memory loss, anxiety and stress, as well as physical problems relating to his back and gout.  The head of human resources, identified only as "Fran", discussed these conditions with the plaintiff, and told him that she would inform the plaintiff's supervisors about the situation and the plaintiff's limitations. (*Id.* ¶¶17-20.)  Fran also assured the plaintiff that he would be accommodated as he "went through his treatment, and she assured [him] that he would never be terminated due to a mistake arising from his disability." (*Id.* ¶ 21.)  The plaintiff claims that because he advised his employer about his physical and mental health challenges, his employer regarded him as having disabilities and that he did, in fact, have disabilities within the meaning set forth in the ADA and its implementing regulations.  He further claims that he believed that he would be able to continue working, with appropriate accommodations, after he returned from FMLA leave,

but that his employment was terminated soon thereafter.  The plaintiff believes, and alleges, that the defendant discriminated against him because of his disabilities, in violation of the ADA and the PHRA.  (Am. Compl., Counts I and III.)

Laborde also alleges that he suffered from serious health conditions that entitled him to take leave under the FMLA.  He alleges that he completed the paperwork necessary for this leave on June 21, 2012, and supported his request for leave with a report from a physician.  Laborde was approved for the FMLA leave on July 12, 2012, and took leave from July 16 through July 20, 2012.  He claims that after returning to work at the casino he felt bullied, and that his mental health was deteriorating from "stressful situations and harassment that the defendant kept inflicting on [him] after he informed HR of his current medical situation."  (*Id.* ¶ 37.)  Based upon this alleged treatment following his leave, Laborde alleges that his suspension and termination was also "directly influenced by his placement on FMLA," and he supports this allegation further by noting that an unemployment compensation referee subsequently concluded that Laborde's termination was "not justifiable," which was ostensibly based on the August 9, 2012, incident involving

a patron's overbetting on roulette and other alleged poor performance.[2]  (*Id.* ¶ 38.)

Laborde alleges that had he not been under treatment for his disability, Mount Airy

would "not have terminated his employment as a result of the incident that

occurred on July 3, 2012." (*Id.* ¶ 39.)  Laborde contends that Mount Airy's

treatment of him following a brief period of FMLA leave, including incidents of

bullying, suspension and termination, amounted to retaliation against him for

exercising his rights under the FMLA.

## III.  STANDARD OF REVIEW

Mount Airy has moved to dismiss the amended complaint, arguing that

Laborde has not alleged sufficient facts to make out a claim of discrimination or

retaliation under the ADA, FMLA, or PHRA.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure tests the legal sufficiency of a complaint.  It is proper for the court to

dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil

Procedure only if the complaint fails to state a claim upon which relief can be

---

[2]  Although not described in any detail, it appears that the plaintiff had an encounter at work on July 3, 2012, that caused Mount Airy to find that he engaged in "inappropriate behavior."  (Am. Compl., ¶ 34.)  Laborde alleges that he later wrote a statement about this incident on July 14, 2012, in which he explained that the unidentified incident was related to his "health concerns and his attempts to see his doctor earlier than his scheduled appointment, due to his recent state of mind, and due to the side effects of the new medication he had been prescribed."  (*Id.* ¶ 35.)  Exhibits to the amended complaint reveal a little more detail, indicating that Laborde filed an incident report on June 24, 2012, regarding an unspecified "incident" with an a co-worker, and that the July 3, 2012, incident involved his supervisor "bullying and yelling at me in front of patrons and workers."  (Am. Compl., Ex. at 18.)

6

granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994).  These allegations and inferences are to be construed in the light most favorable to the plaintiff.  *Id.*  However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has not alleged. . .” *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following the rule announced in *Ashcroft v. Iqbal*, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal*, 556 U.S. at 675, 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## IV.   <u>DISCUSSION</u>

The defendant argues that dismissal is appropriate because, at its center, this case is really "an attempt to impute liability where none exists and avoid

responsibility for plaintiff's unauthorized decision to permit a Mount Airy patron to bet over the table maximum in violation of Mount Airy's policies and procedures, resulting in an overpayment of $3,900." (Doc. 9.)  However, after tacitly acknowledging a clear factual dispute between the parties that forms the core of both the plaintiff's claims and the defendant's defense of its employment decision, Mount Airy argues that dismissal is appropriate because the plaintiff has failed to allege sufficient facts to show that he is actually disabled or that he was regarded as being disabled, and argues further that he has not alleged plausible facts to show that he was discharged because of his disabilities, or in taking FMLA leave to address his medical needs.

### A.   The ADA, ADAAA, Burden Shifting and the *Prima Facie* Standard[3]

The purpose of the ADA is to "prevent employment discrimination of qualified individuals on account of their disability." *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 512 (E.D. Pa. 2012) (citing 42 U.S.C. § 12112(a)).  The Act requires employers to make "reasonable accommodations to

---

[3]  The plaintiff has brought discrimination claims under both the ADA and the PHRA.  "The analytical framework used to evaluate a discrimination claim under the PHRA is effectively indistinguishable form that under the ADA" and hence courts may address the claims under the same legal standards. *See Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 142 n. 5 (3d Cir. 2011); *see also Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim").  Accordingly, the court's consideration of Laborde's ADA claims applies to the PHRA discrimination claim as well.

the known physical and mental limitations of an otherwise qualified individual with a disability, unless the employer demonstrates that such accommodations would impose an undue hardship in the operation of their business." *Id.* (quoting *Fleck v. WILMAC, Corp.*, No. 10-5562, 2011 U.S. Dist. LEXIS 54039, at *10 (E.D. Pa. May 19, 2011)).

In order to make out a *prima facie* claim for workplace discrimination under the ADA, a plaintiff must demonstrate that he is (1) disabled within the meaning of the ADA, (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) has suffered an adverse employment decision as a result of the discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010); see *also Stadtmiller v. UPMC Health Plan, Inc.*, 491 F. App'x 334, 336 (3d Cir. 2012); *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).

If the plaintiff makes a *prima facie* showing under this three-part standard, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Id.* If a legitimate, nondiscriminatory reason is given, then the plaintiff must present evidence to demonstrate that the defendant's reasons were pretext for its unlawful action. *Id.* The plaintiff may meet this burden by identifying evidence that allows a factfinder either to disbelieve the employer's articulated legitimate justification, or to conclude that an

invidious discriminatory reason was more likely than not a "but for" cause of the employment action.  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The ADA was substantially amended by the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (as codified in provisions of 42 U.S.C. §§ 12101 et seq.), which became effective as of January 1, 2009, and, therefore, the amendments to the ADA area applicable to this case.  In passing the amendments to the legislation, "Congress has made clear that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.  Indeed, Congress has instructed that in construing the definition of 'disability' under the ADA, it shall be construed in favor of broad coverage of individuals under the ADA, to the maximum extent permitted by the terms of the [ADA]."  *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 690 (W.D. Pa. 2014 (internal citations and quotations omitted).  Congress's purpose in amending the ADA was to "reinstat[e] a broad scope of protection" under the ADA.  Pub. L. No. 110-325, 122 Stat. 3553 § 2(b).  Under this statutory mandate, the Equal Employment Opportunity Commission ("EEOC") revised its implementing regulations to define disability "broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA."  29 C.F.R. § 1630.1(c)(4).  Review of the definitions provided by the Act and its implementing regulations make clear the expansive reach of the statute's protections.

11

Under the ADAAA, to qualify as disabled, a plaintiff must prove one of the following: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1).

The ADA defines "disability", in pertinent part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). Regulations that have been promulgated by the EEOC define "physical impairment" to include "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting [certain] body systems, such as neurological, *musculoskeletal*, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (emphasis added).

"Major life activities" include functions such as "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1)(i). In determining examples of major life activities, the regulations provide that the term "major" shall not be interpreted to create a "demanding standard" for disability. *Id.* § 1630.2(i)(2).

With respect to major life activities, the regulations provide that the term "substantially limits" shall be defined broadly in favor of expansive coverage, to "the maximum extent permitted by the terms of the ADA" and also is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). An impairment is considered a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.* § 1630.2(j)(1)(ii). However, an impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," *Id.*, although "not every impairment will constitute a disability[.]" *Id.* The thrust of the ADAAA and its implementing regulations thus call for broad coverage and consideration of an individual's own particular circumstances in determining whether that individual is suffers from a disability within the meaning of the Act.

## B.    The Plaintiff Has Alleged that He Suffered an Actual Disability and that the Defendant Terminated His Employment Because of that Disability

Contrary to the defendant's brief, the plaintiff's amended complaint does allege that he suffered from multiple disabling conditions that affected his employment, including back problems, gout, and a constellation of mental health challenges that impacted his work. The defendant is really arguing that the plaintiff has not sufficiently alleged facts to show how his alleged disabilities

impaired or limited his ability to work.  The court disagrees.  In fact, the plaintiff

has alleged that his back problems and gout were significant enough to interfere

with his ability to stand for long periods, and he not only included this allegation

(Am. Compl. ¶ 14(f)), but further included documentation with his amended

complaint documentation from his physician dated June 26, 2012, attesting to

chronic back pain due to disk displacement and gout, which inhibited the plaintiff's

ability to stand (Am. Compl., Exhibits).

Additionally, the plaintiff included with his complaint documentation that he

provided to Mount Airy that detailed his "chronic medical conditions" that

supported his request for FMLA leave, which he provided to the casino on July 9,

2012, that included this information, noting that that a back ailment stemming from

disk disease and gout were conditions were permanent and of "indefinite" duration,

and that when the plaintiff experienced flare-ups he would be "unable to perform

work duties."  (*Id.*)  Laborde further alleged that he had made the head of HR,

"Fran," aware in February 2012, about what he referred to as a "mental disability"

relating to stress, depression and anxiety, which could interfere with his ability to

work in certain "overwhelming or stressful situations".  (*Id.*)

Moreover, the complaint alleges not only that some information regarding

disabling conditions was communicated to the casino's human resources

coordinator, but that the coordinator would "let the appropriate supervisors or

14

bosses know of [his] situation and limitations" and that she assured him that the casino "would accommodate [him] as I go through [his] treatment" and "would never [terminate him] due to a mistake due to my disability." (*Id.*, Ex. at 17.) This allegation implies that the plaintiff's disabling conditions were communicated, and that human resources was made aware of how these disabilities interfered with the plaintiff's ability to perform his job functions.

Likewise, in his ADA intake questionnaire, which was submitted on or about July 27, 2012, the plaintiff noted that his mental disability was triggered by overly stressful work conditions, something that human resources knew about, and that the plaintiff's work environment was manageable "until [his] area got too stressful," which caused his mental condition to worsen. (*Id.*, Ex. at 18.) The plaintiff provided further detail when he indicated on this form that on July 13, 2012, he had been placed in "a very stressful area, watching games in two different pits" which caused "an incident with anxiety, memory loss, stress, etc." (*Id.*, Ex. at 19.) Laborde claims that he wrote an incident report about this particular episode, and he claims further that casino personnel including "Fran" and a benefits specialist named Carol Benginia were aware of his conditions and limitations, and had received FMLA forms that he submitted. (*Id.*, Ex. at 20.)

In an earlier communication, Laborde's psychiatrist indicated that although he generally was able to perform the functions of his job despite his mental

disability, when he had a "flare up" he would be unable to do so. (*Id.*, Ex. at 27.) This form indicated that Laborde's treatments may result in him needing a reduced number of work hours to attend to his medical needs, and that episodic stressful situations could cause his anxiety to worsen "resulting in irritability, anxiety and depression." (*Id.*, Ex. at 28.) When such would occur, the psychiatrist noted that Laborde would need to "leave work early," and that this could occur as frequently as twice per month.[4] (*Id.*)

These examples are all set forth in exhibits that the plaintiff attached to and incorporated into his amended complaint and at this early juncture are sufficient to overcome the defendant's assertion that Laborde has provided no indication in the complaint about what actual disabilities he claims to suffer, and how those physical and mental disabilities limited his ability to perform the functions of his job, or otherwise present limitations to his life functioning.

The defendant also argues that Laborde has fallen "far short of plausibly establishing that Mounty Airy terminated plaintiff's employment 'because of' any disability, perceived or actual." (Doc. 9, at 11.) Of course, the plaintiff need not

---

[4] Mount Airy minimizes the plaintiff's alleged mental health conditions in some ways, by suggesting that they are related solely to the death of his father, and citing to cases suggesting that situational depression that does not last more than a few months generally is not sufficient to establish that he had a perceived disability. This argument seems misplaced, however, since the plaintiff had apparently been working with the casino's human resources personnel throughout much of 2012 regarding not only his physical limitations but also a host of mental challenges which do not appear to have been transitory. In any event, these arguments take us beyond the pleadings themselves and cannot be addressed through a motion to dismiss.

"establish" any of his claims with evidence yet, but the casino argues that the plaintiff has not even generally pled that he was discharged because of an alleged disability – yet, this is precisely what the plaintiff does, by generally alleging that he believed, based on the defendant's knowledge of his physical and mental limitations, his use of FMLA leave, and his termination shortly thereafter that his suspension and termination were the product of unlawful discrimination.  Whether the plaintiff can prove this averment with evidence, or through evidence that creates a reasonable inference of discriminatory animus, should await further proceedings, as his complaint adequately puts the defendant on notice regarding the factual basis for the claim.

### C.     The Plaintiff Has Adequately Pleaded a Claim for FMLA Retaliation

The defendant has similarly moved to dismiss the plaintiff's retaliation claim under the FMLA, arguing that the plaintiff has failed to plead facts to make out a prima facie case, and that he has not pled any facts to show how he was retaliated

against.[5]  The court disagrees.

"FMLA retaliation claims are rooted in the FMLA regulations."  *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014) (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009)).  Those regulations prohibit an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  29 C.F.R. § 825.220(c).  Like the discrimination claims discussed above, FMLA retaliation claims that are based on indirect or circumstantial evidence are governed by the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Budhun*, 765 F.3d at 256; *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).  That framework provides that to make out a prima facie case for retaliation, a plaintiff must show that "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave."  *Conoshenti v. Public Serv.*

---

[5]  Mount Airy also argues that the plaintiff has not adequately pled a claim for interference with his rights under the FMLA.  It does not appear that the plaintiff is pursuing an interference claim in this case, as Count II alleges only FMLA retaliation.  The only allegation in the amended complaint that is even suggestive of an interference claim is found in paragraph 40, which alleges that "Defendant's actions . . . resulted in the plaintiff being denied his right to take statutorily protected leave pursuant to 29 U.S.C. Section 2612."  Review of the amended complaint as a whole reveals that the plaintiff is proceeding only under a retaliation theory with respect to the FMLA, and his brief confirms that he is not claiming that the defendant interfered with his right to take leave.  Indeed, the plaintiff has alleged that the defendant facilitated his leave.  (Am. Compl., ¶ 31 ("The plaintiff was provided with the necessary FMLA paperwork to complete on June 21, 2012") and ¶ 37 ("Subsequently, after being granted FMLA leave by the defendant . . . .").)

*Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004).  In order to establish causation, a plaintiff must either show that the temporal proximity between the protected activity and adverse action is unduly suggestive, or that the facts demonstrate a pattern of antagonism that raises an inference of retaliatory animus.  *Lichtenstein*, 691 F.3d at 307; *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001).  If the plaintiff makes this showing, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for" the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  If the employer meets this "minimal burden," *Lichtenstein*, 691 F.3d at 302, "the plaintiff must point to some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Relying on two unpublished district court decisions in which courts concluded that a one-month time period between FMLA leave and adverse employment action was not unduly suggestive, the defendant argues that because Laborde was suspended and terminated just a little less than a month after his FMLA leave concluded, he cannot rely upon temporal proximity to establish causation.  Notably, both of the cases the defendant relies upon were decided on motions for summary judgment, not on a motion to dismiss, which merely tests the

sufficiency of the allegations to see whether they state a claim.[6]   Additionally, these cases provide little precedential support for the assertion that such a temporal gap of less than a month can never be suggestive of retaliatory motive.

Furthermore, the plaintiff has not only relied upon the passage of less than a month between his FMLA leave and adverse employment action to suggest causation in the complaint.  To the contrary, Laborde has also alleged that when he returned from work, he experienced bullying by the defendant, and found that his mental health was being compromised "due to the stressful situations and harassment that the defendant kept inflicting on the plaintiff after he informed HR of his current medical situation."  (Am. Compl. ¶ 37.)  This allegation is somewhat general, but it is nevertheless an allegation that when combined with the adverse employment action taken less than a month after the plaintiff took FMLA leave is adequate to make out a prima facie case of FMLA retaliation, which is all the plaintiff needs to do at this point.  Whether the plaintiff may ultimately be able to adduce evidence to support the causation element is something that should await discovery and further proceedings.

---

[6]  The cases the defendant relies on are *Outten v. Genesis Health Care, LLC*, No. 13-4708, 2014 WL 3964918, at *12 (E.D. Pa. Aug. 12, 2014) and *Schummer v. Black Bear Distribution*, LLC, 965 F. Supp. 2d 493, 498-99 (D.N.J. 2013).  Both cases, including the plaintiffs' FMLA retaliation claims, were disposed of through motions for summary judgment.

V.     **CONCLUSION**

The plaintiff's amended complaint sufficiently articulates facts to state a claim for discrimination under the ADA and PHRA, and for retaliation under the FMLA.   Although the amended complaint is relatively brief, it avers that the plaintiff suffered from a number of physical and mental disabilities that Mount Airy knew about, and which were the subject of communication between employer and employee through 2012 until the plaintiff's suspension and termination.   The plaintiff has contended that the defendant unlawfully terminated his employment because of his disabilities, and because he exercised his right to take qualifying leave under the FMLA.   The defendant has argued that the plaintiff has included insufficient factual allegations to demonstrate that he suffered from actual disabilities, but the court disagrees, and notes that the amended complaint includes multiple allegations regarding the plaintiff's back problems and gout, as well as an array of mental-health conditions for which he was seeking treatment in 2012. Furthermore, the plaintiff has alleged that he took qualifying FMLA leave and after returning to work was bullied and subjected to retaliatory treatment, ending with the termination of his employment just weeks after he returned to the casino.

Whether the plaintiff can prove that his termination was discriminatory or retaliatory is a factual matter, something made clear by the fact that the defendant essentially insists throughout its briefs that the plaintiff was terminated for

violating casino rules, noting that the plaintiff acknowledged this violation.   At

bottom, this presents a factual dispute that should be tested through discovery and,

if warranted, tested further through a properly documented motion for summary

judgment if the defendant believes that the plaintiff has insufficient evidence to

support his discrete claims.

## VI.   **RECOMMENDATION**

Accordingly, it is RECOMMENDED that the defendant's motion to dismiss

(Doc. 8.) be denied.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

22

/s/  **Martin C. Carlson**
Martin C. Carlson
United States Magistrate Judge

Dated: October 28, 2016