THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RODNEY LABORDE,                    :
                                   :
            Plaintiff,             :
                                   :
      v.                           :      3:16-CV-769
                                   :      (JUDGE MARIANI)
MOUNT AIRY CASINO,                 :
                                   :
            Defendant.             :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

In this civil rights action Plaintiff, Rodney Laborde, claims that Defendant, Mount Airy

Casino, unlawfully terminated his employment as a Table Games Floor Supervisor.

Specifically, Plaintiff asserts that Defendant decided to discharge Plaintiff because of his

disabilities and in retaliation for Plaintiff taking intermittent medical leave from work. As a

result, Plaintiff asserts three claims in his Amended Complaint: a disability discrimination

claim under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §

12101 *et seq*., (Count I), a retaliation claim under the Family and Medical Leave Act of

1993, ("FMLA"), as amended, 29 U.S.C. § 2601 *et seq*., (Count II), and a disability

discrimination claim under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951,

*et seq*., (Count III).  (Doc. 7).  Presently before the Court is Defendant's Motion for

Summary Judgment.  (Doc. 26).  For the reasons that follow, the Court will grant in part and

deny in part Defendant's Motion.

## II. STATEMENT OF UNDISPUTED FACTS

Before turning to the facts of this case, the Court must address a preliminary issue. In compliance with Local Rule 56.1, Defendant submitted a statement of facts, (Doc. 28), which it contends are undisputed. Plaintiff's response, (Doc. 29), contains a number of denials based on evidentiary objections. *See* FED. R. CIV. P. 56(c)(2). Most of Plaintiff's evidentiary objections, however, are severely flawed. For example, the second fact contained in Defendant's Statement of Undisputed Material Facts states: "Mount Airy offers over 1,800 slot machines and over 70 table games such as Blackjack, Craps, Roulette, and Baccarat." (Doc. 28 at ¶ 2). Defendant supports this fact with a citation to the seventh paragraph of a declaration authored by Dennis Asselta, Defendant's Executive Director of Table Games. (Doc. 28-2). Plaintiff denies that this fact is undisputed because "[p]aragraphs 27, and 31-36 of Dennis Asselte's [sic] Declaration contain hearsay statements from third parties." (Doc. 29 at ¶¶ 1-6).

Setting aside the merits of Plaintiff's hearsay objections, Defendant's second fact does not rely on any of the paragraphs in Asselta's declaration that Plaintiff's contends contain inadmissible hearsay. Thus, it appears that Plaintiff asks this Court to reject all forty-three paragraphs of Asselta's declaration because the document contains seven paragraphs which Plaintiff believes contain inadmissible hearsay. Plaintiff, however, cites no authority that would endorse such draconian measures. Accordingly, the Court has

deemed admitted any fact opposed only by improper denials of this nature.[1] *See* Local Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."). With that in mind, the following facts are undisputed unless specifically noted otherwise:

Defendant operates a casino and resort located in Mount Pocono, Pennsylvania. (Doc. 28 at ¶ 1). On March 5, 2010, Defendant offered Plaintiff a full-time position as a Floor Supervisor in the casino. (Doc. 28 at ¶ 51; Doc. 29 at ¶ 51). A Floor Supervisor oversees tables and dealers to ensure compliance with Defendant's policies and state regulations. (Doc. 28 at ¶¶ 11, 16; Doc. 29 at ¶ 11). While a Floor Supervisor may supervise up to a maximum of six tables at one time, the number of tables he or she is assigned to supervise vary from day to day, or even within the same shift. (Doc. 28 at ¶¶ 20-21). Floor Supervisors report to Pit Managers, who report to Shift Managers, who report to the Director of Table Games, who reports to the Vice President of Casino Operations. (Doc. 28 at ¶ 7; Doc. 29 at ¶ 7). At the time of Plaintiff's employment, Jim Tuthill was the Vice President of Casino Operations, Dennis Asselta was the Director of Table Games, and John Collins was a Shift Manager. (Doc. 28 at ¶ 8).

On July 22, 2011, Mr. Collins and Mr. Asselta suspended Plaintiff for three days after receiving a report that Plaintiff swore at another employee. (Decl. of Dennis Asselta, Doc.

---

[1] Plaintiff makes similar improper denials with respect to the declarations of John Collins, (Doc. 28-9), and Frances Kneisc, (Doc. 28-13).

28-2 at ¶ 29). Using profane language is prohibited by Defendant's Code of Conduct. (Doc. 28 at ¶ 45; Doc. 29 ¶ 45). On the Employee Discipline Notice, Plaintiff denied using any profanity towards another employee. (Doc. 28-10). On January 10, 2012, Mr. Collins issued Plaintiff a second Employee Disciplinary Notice. (Decl. of Dennis Asselta, Doc. 28-2 at ¶ 30; Doc. 28-11). The notice stated that Plaintiff acted disrespectfully towards another employee when requesting ice from a service bar. (Doc. 28-11). Acting disrespectfully towards other employees is prohibited by Defendant's Code of Conduct. (Doc. 28 at ¶ 45; Doc. 29 ¶ 45). On the notice, Plaintiff denied any misconduct. (Doc. 28-11).

On February 11, 2012, Plaintiff was suspended and issued a third Employee Disciplinary Notice. (Doc. 28-12). The notice accused Plaintiff of acting disrespectfully towards a Pit Manager when asked to fill in for another employee on break and of failing to maintain proper chip banks. (Id.). On the notice, Plaintiff denied any misconduct and stated that he was having trouble dealing with the death of his father which may have impacted his work. (Id.) Plaintiff also indicated that he was getting treatment. (Id.). Frances Kneisc, the Executive Director of Human Resources, met with Plaintiff during his suspension and discussed the treatment he was receiving to help him cope with the death of his father. (Doc. 28 at ¶ 66). After that meeting, despite a recommendation from Plaintiff's supervisors that he be discharged, Ms. Kneisc decided not to terminate Plaintiff's employment. (Decl. of Frances Kneisc, Doc. 28-13 at ¶ 5; Dep. of Rodney Laborde, Doc. 28-3 at 115).

In June of 2012, Plaintiff talked with Carol Benginia in Defendant's Human Resources office about intermittent medical leave. (Doc. 28 at ¶ 75; Doc. 29 at ¶ 75). Ms. Benginia provided Plaintiff with information about FMLA leave, including a Notice of Eligibility form, an application to use FMLA leave, and certifications that needed to be completed by Plaintiff's doctors. (Doc. 28 at ¶ 76; Doc. 29 at ¶ 76). On July 3, 2012, Ms. Benginia received a certification from Plaintiff's doctor stating that Plaintiff "suffers from chronic back pain secondary to disk dx & spondylolisthesis" and "gout that frequently flares," both of which would require Plaintiff to take time off of work when the conditions flared up. (Doc. 28 at ¶¶ 77-79; Doc. 29 at ¶¶ 77-79). On July 10, 2012, Plaintiff requested intermittent leave based on his medical issues. (Doc. 28 at ¶ 80; Doc. 29 at ¶ 80). Two days later, Ms. Benginia notified Plaintiff that he had been approved for intermittent FMLA leave and explained the procedure Plaintiff should use to take leave. (Doc. 28 at ¶ 81; Doc. 29 at ¶ 81). Plaintiff took FMLA leave from July 16, 2012, through July 20, 2012. (Doc. 28 at ¶ 88; Doc. 29 at ¶ 88).

On July 17, 2012, Ms. Benginia received a second certification from a different doctor stating that Plaintiff suffered from anxiety and depression which would require Plaintiff to take time off of work when those conditions flared up. (Doc. 28 at ¶¶ 83-84; Doc. 29 at ¶¶ 83-84). The doctor also noted that "due to stress [Plaintiff's] anxiety can worsen resulting in irritability, anxiety and depression." (Doc. 28-21 at 4).

On the evening of August 9, 2012, Plaintiff was assigned to supervise six tables including at least one roulette game. (Doc. 28 at ¶ 89, Doc. 29 at ¶ 89). Throughout his employment, Plaintiff supervised four to six tables at once. (Doc. 28 at ¶ 55; Doc. 29 at ¶ 55). At the time, when a Floor Supervisor was overseeing six tables at one time, the maximum bet permitted at a roulette game was fifty dollars. (Doc. 28 at ¶ 23). When a Floor Supervisor was supervising four tables, the maximum bet permitted at a roulette game was one hundred dollars. (Doc. 28 at ¶ 24). A sign on each table stated the maximum and minimum bet. (Doc. 28 at ¶ 22).[2] Absent a Pit Manager explicitly giving a Floor Supervisor the discretion to do so, only Pit Managers and Shift Supervisors were allowed to increase the maximum bet allowed at a table. (Doc. 28 at ¶¶ 25, 27).

Sometime between 12:00 a.m. and 1:00 a.m. on August 10, 2012, surveillance notified Mr. Collins that Plaintiff had, over a period of twenty minutes, allowed a gambler to make eighteen bets over the $50 table limit on a roulette game. (Decl. of John Collins, Doc. 28-9 at ¶ 10). Plaintiff was not given the discretion to change the table maximums or minimums. (Id. at ¶ 9). The bets that were made over the table maximums resulted in the gambler receiving $3,900 in extra winnings and $900 in extra losses. (Doc. 28 at ¶ 95; Doc. 29 at ¶ 95). The gambler became very upset after Mr. Collins recouped the $3000

---

[2] Plaintiff asserts that the declaration on which Defendant relies to support this statement contains hearsay. The underlying declaration, in relevant part, states: "Each table game on Mount Airy's main casino floor contains signage stating a minimum and maximum bet for the table." (Decl. of Dennis Asselta, Doc. 28-2 at ¶ 27). This statement made by the Executive Director of Table Games, on its face, does not contain any hearsay. As Plaintiff fails to explain the basis of his hearsay objection and does not cite any record evidence to the contrary, the Court deems this statement admitted. See Local Rule 56.1.

overpayment. (Decl. of John Collins, Doc. 28-9 at ¶¶ 15-16). Believing Plaintiff made a mistake, Mr. Collins issued Plaintiff a written warning that day. (Decl. of John Collins, Doc. 28-9 at ¶ 17). On the Employee Disciplinary Notice, Plaintiff admitted to approving bets over the table maximum. (Doc. 28-22).

Based on his schedule, Plaintiff had the next two days off of work. (Dep of Rodney Laborde, Doc. 28-3 at 129). On August 11, 2012, Mr. Collins met with the dealer who took the excessive bets, Robin Dawson. (Decl. of John Collins, Doc. 28-9 at ¶¶ 11, 19). On the Employee Disciplinary Notice, Ms. Dawson wrote that the minimum and maximum bet sign was changed in the middle of the shift and Ms. Dawson was told not to tell anyone. (Id. at ¶ 20; Doc. 28-9 at 8). Based upon this information, Collins requested that the surveillance department show him the tape of Ms. Dawson's table. (Decl. of John Collins, Doc. 28-9 at ¶ 21). After viewing it himself, Mr. Collins gave Mr. Asselta the surveillance footage to view. (Id. at ¶ 23). According to Mr. Collins and Mr. Asselta, the surveillance footage shows Plaintiff changing the table limits sign at 12:12 a.m. and talking to Ms. Dawson while doing so. (Id. at ¶ 22; Decl. of Dennis Asselta, Doc. 28-2 at ¶ 37). The date and time stamped video, submitted as an exhibit, shows a man dressed in a black shirt, purportedly Plaintiff, taking a sign off of a roulette table, bringing a sign back, and talking to the table's dealer. Due to the video's quality, the signs cannot be read.[3]

---

[3] Plaintiff objects to the video being submitted as an exhibit because "[t]he videotape has not been authenticated as required under Federal Rules of Evidence Nos. 901 and 902." (Doc 29 at ¶ 56). This objection is without merit as unauthenticated evidence may be considered on summary judgment so long

Mr. Asselta shared the surveillance footage with Mr. Tuthill and discussed the incident. (Decl. of Dennis Asselta, Doc. 28-2 at ¶ 38). Mr. Tuthill made the decision to suspend Plaintiff and seek approval from human resources to terminate his employment.[4] (Id.). Plaintiff took approved FMLA leave on August 13, 2012. (Doc. 28 at ¶ 88; Doc. 29 at ¶ 88). When Plaintiff returned to work on August 14, 2012, two of Plaintiff's supervisors gave Plaintiff a notice that indicated that he was being suspended pending an investigation. (Dep of Rodney Laborde, Doc. 28-3 at 138; Doc. 28-23). That same day, Mr. Collins and Mr. Tuthill made Ms. Kneisc aware of the August 10, 2012, incident. (Decl. of Dennis Asselta, Doc. 28-2 at ¶ 40). After Ms. Kneisc approved the recommendation to terminate Plaintiff's employment, Plaintiff was discharged on August 16, 2012. (Decl. of Frances Kneisc, 28-13 at ¶ 13-14).

---

as it can be authenticated at trial. See Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 329 n.6 (3d Cir. 2005); Cordance Corp. v. Amazon.com, Inc., 639 F. Supp. 2d 406, 432-33 (D. Del. 2009). Plaintiff has put forth no arguments as to why this evidence cannot be authenticated at trial. See FED. R. CIV. P. 56(c)(1) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." (emphasis added)). Further, the Court is convinced that the declaration of Mr. Collins, who identifies the video as "[a] true and correct copy of the surveillance footage," (Decl. of John Collins, Doc. 28-9 at ¶ 22), is sufficient to authenticate the evidence. See FED. R. EVID. 901; Taylor v. Amcor Flexibles Inc., 669 F. Supp. 2d 501, 512 (D.N.J. 2009) (finding a photograph of a Caller-ID was sufficiently authenticated on summary judgment when "Plaintiff did not take the photograph in question" but did "identif[y] the picture as being of his Caller–ID in his Declaration.").

[4] Plaintiff objects that paragraph thirty-eight of Mr. Asselta's declaration contains inadmissible hearsay. Paragraph thirty-eight states: "I discussed the reports from Mr. Collins and Ms. Dawson and shared the surveillance footage with Mr. Tuthill. Mr. Tuthill decided to suspend Plaintiff's employment and to seek approval from Human Resources to terminate his employment." (Decl. of Dennis Asselta, Doc. 28-2 at ¶ 38). This paragraph does not contain any out of court statements and thus is not hearsay. Further, even if the paragraph did contain hearsay, there is no indication that Mr. Tuthill cannot be called to testify at trial. "[T]he rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial." Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995); Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light

most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

Defendant puts forth a variety of arguments as to why it is entitled to summary judgment on Plaintiff's claims. The Court will address each argument in turn.

## A. ADA Claim[5]

Defendant first argues that the Court should grant Defendant summary judgement on Plaintiff's disability discrimination claims because Plaintiff cannot establish a prima facie case of disability discrimination.[6] (Doc. 27 at 12-14). The ADA prohibits an employer subject to the Act from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[7] "A plaintiff may assert an ADA disability discrimination claim with direct or circumstantial evidence." *Wilkie v. Luzerne Cty.*, 207 F. Supp. 3d 433, 436 (M.D. Pa. 2016).

Where a claim of disability discrimination rests on circumstantial evidence, the claim is analyzed according to the familiar burden shifting approach laid out in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Wilkie,*

---

[5] Although Plaintiff also alleges disability discrimination under the PHRA, the Court need not address that claim separately because "the same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 499 n.3 (3d Cir. 2010). Thus, the Court's conclusions with respect to Plaintiff's ADA claim apply equally to Plaintiff's PHRA claim. *See Capps v. Mondelez Global, LLC*, 847 F.3d 144, 150 n.1 (3d Cir. 2017); *see also Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005) (noting that when the same standard applies to both a federal claim and a PHRA claim, "it is proper to address them collectively").

[6] Defendant also argues that it is entitled to summary judgment on Plaintiff's failure to accommodate claim under the ADA. (Doc. 27 at 6-11). In Plaintiff's brief, however, he expressly states that "Plaintiff did not plead a failure to accommodate claim." (Doc. 30 at 3). Thus, because Plaintiff has stated that he is not pursuing a failure to accommodate claim, the Court need not address Defendant's arguments on this point.

[7] Although a litigant may assert a retaliation claim under the ADA, *see Williams v. Phila. Hous. Auth. Police Dept.*, 380 F.3d 751, 758-761 (3d Cir. 2004), Plaintiff has only brought a disability discrimination claim. (Doc. 7 at ¶¶ 17-26, 44-50; Doc. 30 at 1-2).

207 F.Supp.3d at 436; *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996).

"Briefly summarized, the *McDonnell Douglas* analysis proceeds in three stages. First, the

plaintiff must establish a prima facie case of discrimination." *Jones v. Sch. Dist. of Phila.*,

198 F.3d 403, 410 (3d Cir. 1999). "If a plaintiff establishes a prima facie case, the burden of

production (but not the burden of persuasion) shifts to the defendant, who must then offer

evidence that is sufficient, if believed, to support a finding that the defendant had a

legitimate, nondiscriminatory reason for the adverse employment decision." *Stanziale v.*

*Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000) (alterations and quotation marks omitted). "If

a defendant satisfies this burden, a plaintiff may then survive summary judgment by

submitting evidence from which a factfinder could reasonably either (1) disbelieve the

employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory

reason was more likely than not a motivating or determinative cause of the employer's

action." *Id.*

To establish a prima facie case of disability discrimination, "the plaintiff must show:

'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to

perform the essential functions of the job, with or without reasonable accommodations by

the employer; and (3) he has suffered an otherwise adverse employment decision as a

result of discrimination.'" *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)

(quoting *Gaul v. Lucent Tech.*, 134 F.3d 576, 580 (3d Cir. 1998)). Here, Defendant does

not dispute that Plaintiff was disabled within the meaning of the ADA or that he was qualified

12

to perform his essential job functions. Instead, Defendant argues that there is no evidence that Plaintiff was terminated as a result of discrimination. (Doc. 27 at 13).

"To survive summary judgment, [a plaintiff] must provide evidence that supports a logical inference of causation between the alleged disability and the adverse employment action." *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 700 (W.D. Pa. 2014) (quotation marks omitted).[8] Plaintiff has put forth several arguments as to why the record would support such a finding of causation. Upon review of Plaintiff's arguments and the record, however, the Court finds there is no evidence that would indicate that there was a causal relationship between Plaintiff's disabilities and Defendant's decision to terminate his employment.

Initially, Plaintiff argues that upon notifying Defendant about his various disabilities, Plaintiff began feeling bullied and harassed. (Doc. 30 at 5). Plaintiff, however, primarily relies on the allegations in his Amended Complaint to support this argument. It is now axiomatic "that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (alteration and quotation marks omitted). Thus, Plaintiff's reliance on the allegations in his Amended Complaint is misplaced.

---

[8] The Third Circuit has noted that the causation element of a prima facie case "is not easily distinguishable from" the later inquiry at the pretext stage and "nothing about the *McDonnell Douglas* formula requires [a Court] to ration the evidence between one stage or the other." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000).

The only evidence that Plaintiff uses to support his allegation that he was bullied and harassed is a comment he made on a document labeled "ADA INTAKE QUESTIONNAIRE" which Plaintiff attached to his Amended Complaint. (Doc. 7-1 at 19). Responding to the question on the form which asked if any "managers or supervisors made negative comments concerning your disability," Plaintiff wrote: "1. Incident report on file dated June 24, 2012 involving Anthony Reynolds. 2. Incident report on file dated July 3, 2012 involving John Collins bullying and yelling at me in front of patrons and workers." (Id.).

There are two problems with these statements. First, Plaintiff did not put these incident reports of record. Thus, there is no information about these alleged incidents beyond Plaintiff's conclusory statement that he was bullied and yelled at because of his disability. Second, these statements are directly contradicted by Plaintiff's later deposition testimony. When asked at his deposition if anyone had ever made any negative comments about him with respect to his disability, Plaintiff responded, "No, I don't think so. I don't think it went, you know, to that, no, I don't think so." (Dep. of Rodney Laborde, Doc. 28-3 at 292-93). Further, Plaintiff has agreed that it is undisputed that "[n]o one at Mount Airy ever made a negative comment to Plaintiff about him suffering from a disability." (Doc. 28 at ¶ 70; Doc. 29 at ¶ 70). Thus, the comments on the intake questionnaire, without more, do not create a genuine dispute of fact for trial. Cf. Hackman v. Valley Fair, 932 F.2d 239, 240 (3d Cir. 1991) (holding "that a plaintiff's affidavit contradicting his prior deposition testimony does not create a factual dispute barring summary judgment."); In re CitX Corp., Inc., 448

F.3d 672, 679-80 (3d Cir. 2006) (holding that a district court, on summary judgment, may disregard an affidavit that is contradicted by earlier or later deposition testimony).

Next, Plaintiff seems to argue that Defendant terminated his employment because Defendant regarded him as having a stress related disability. (Doc. 30 at 3-4, 9-10). Under the ADA, the term "disability" includes "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). An individual is "regarded as" disabled "if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Although it is far from clear, it appears that Plaintiff asserts that he has a disability whereby he is unable to cope with stressful situations. (Doc. 30 at 3-4). Plaintiff asserts that because of his condition, he "should not be exposed to high levels of stress." (Decl. of Rodney Laborde, Doc. 29-1 at ¶ 1). According to Plaintiff's argument, "[o]n the night of August 9, 2012, instead of relieving a high stress situation by suggesting to the Plaintiff that he invoke his intermittent FMLA and go home, he was instead assigned to supervise six gaming tables instead of his usual four." (Id. at 3). Plaintiff also submits a declaration in which he states his supervisor should have known that assigning Plaintiff six tables to supervise would cause him extreme stress. (Decl. of Rodney Laborde, Doc. 29-1 at ¶ 6).

Plaintiff then states "I truly believe that I was put in that situation of watching six games for the purpose of causing me to make a mistake so that Mt. Airy did not have to deal with my FMLA situation." (*Id.*).

Even assuming that Defendant regarded Plaintiff as disabled based on Plaintiff's inability to handle high stress situations, there are several problems with Plaintiff's argument. First, Plaintiff has cited no authority, and the Court is aware of none, that would place an affirmative duty on Defendant to suggest to Plaintiff that he use his FMLA leave. Second, Plaintiff's statement that he "believe[d]" that his supervisor was setting him up to fail contains no factual support for Plaintiff's belief and thus is inadequate in the face of a properly supported motion for summary judgement. *See Fowler v. Borough of Westville*, 97 F. Supp. 2d 602, 607 (D.N.J. 2000) ("'Affidavits speculating as to motivations but containing no factual support do not conform to the rule and statements prefaced by the phrases, 'I believe' or 'upon information and belief' . . . are properly subject to a motion to strike.'" (alteration in original) (quoting *Carey v. Beans*, 500 F. Supp. 580, 583 (E.D. Pa. 1980))); *Lowe v. Phila. Newspapers, Inc.*, 594 F. Supp. 123, 126 (E.D. Pa. 1984) ("Rule 56(e) mandates that affidavits submitted in opposition to a motion for summary judgment must state that they are based upon 'personal knowledge' of the affiant. Affidavits prefaced upon 'belief' or 'information and belief' must be stricken.").

Third, Defendant was under no obligation to transfer Plaintiff to a less stressful environment whenever Plaintiff felt stressed. An employer is not required to provide an

accommodation that "would impose an undue hardship on the operation of the business of"

the employer. 42 U.S.C. § 12112(b)(5)(A). In *Gaul v. Lucent Technologies, Inc.*, the Third

Circuit found that an employer, AT & T, did not violate the ADA when it refused to transfer

an employee, Gaul, to a less stressful environment every time Gaul experienced "prolonged

and inordinate stress" from those around him. 134 F.3d at 579-81. According to the Circuit,

> Gaul's proposed accommodation would impose a wholly impractical
> obligation on AT & T or any employer. Indeed, AT & T could never achieve
> more than temporary compliance because compliance would depend entirely
> on Gaul's stress level at any given moment. This, in turn, would depend on an
> infinite number of variables, few of which AT & T controls. Moreover, the term
> "prolonged and inordinate stress" is not only subject to constant change, it is
> also subject to tremendous abuse. The only certainty for AT & T would be its
> obligation to transfer Gaul to another department whenever he becomes
> "stressed out" by a coworker or supervisor. It is difficult to imagine a more
> amorphous "standard" to impose on an employer.

*Id*. at 581. Here, like in *Gaul*, Plaintiff's assertion that he "should not be exposed to high

levels of stress" is an unreasonable standard to impose on Defendant. Accordingly,

Defendant did not violate the ADA by not moving Plaintiff to a less stressful environment

when Plaintiff experienced work-related stress.

In sum, Plaintiff has failed to point to any evidence in the record which would indicate

a causal relationship between Plaintiff's alleged disabilities and Defendant's decision to

terminate Plaintiff's employment. At best, the record supports a finding that Plaintiff had

several disabilities, Defendant was aware of those disabilities, and Defendant terminated

Plaintiff's employment. Without any evidence from which a jury could infer that Defendant

terminated Plaintiff *as a result of* Plaintiff's disabilities, Plaintiff fails to establish a prima facie

17

case of disability discrimination. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) ("[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action."). Nevertheless, even assuming that Plaintiff could establish a prima facie case, the Court finds that Plaintiff cannot rebut Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

As discussed above, once Plaintiff establishes a prima facie case, the burden of production shifts to Defendant to proffer a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. *Stanziale*, 200 F.3d at 105. Defendant has asserted that it terminated Plaintiff's employment because he tried to cover up his error in approving bets over a table maximum and instructed a subordinate not to tell anyone. (Doc. 27 at 15-16). As this satisfies Defendant's burden, Plaintiff must point "to 'some' evidence from which a factfinder could reasonably conclude that the defendant's proffered reasons were fabricated (pretextual)." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

"To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765. "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (alteration, internal citations, and quotation marks omitted). Stated otherwise, a Plaintiff must "submit[ ] evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Stanziale,* 200 F.3d at 105.

Plaintiff advances several arguments as to why a reasonable factfinder could disbelieve Defendant's proffered reason for terminating Plaintiff's employment based on the evidence in the record. Plaintiff first argues that the unemployment compensation referee found that Plaintiff's termination was "not justifiable." (Doc. 30 at 5, 6-7). Even assuming, however, that the referee's findings are relevant to this lawsuit, *see, e.g., Tukesbrey v. Midwest Transit, Inc.,* 822 F. Supp. 1192, 1197 (W.D. Pa. 1993) (holding that an unemployment compensation referee's finding that an employee committed no willful misconduct was not relevant to whether the employer terminated the employee in violation of Veteran's Reemployment Rights Act), the referee's findings do not support an inference that Defendant's stated reason for terminating Plaintiff's employment was a pretext.

Contrary to Plaintiff's assertion, the referee did not find that Plaintiff's termination was "not justifiable." Instead, the referee found that "[b]ased on the evidence presented . . . [Plaintiff]'s actions did not rise to the level of willful misconduct." (Doc. 35 at 2). This finding

is not inconsistent with Defendant's stated reason for terminating Plaintiff because "[w]hen the employer relies on particular criticisms as a reason for the adverse action, 'the issue is not whether the [ ] criticisms of [the plaintiff] were substantiated or valid. . . . [T]he question is whether [the employer] believed those criticisms to be accurate and actually relied upon them.'" *Steward v. Sears Roebuck & Co.*, 231 F. App'x 201, 210 (3d Cir. 2007) (alterations in original) (quoting *Fuentes*, 32 F.3d at 766-67); *see also Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) (noting that the plaintiff's "view of his performance is not at issue; what matters is the perception of the decision maker.") *overruled, in part, on other grounds*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). Here, the referee made the specific finding that "[o]n August 14, 2012 the employer discharged the claimant *due to its belief* the claimant changed the sign to a maximum bet of \$100 and verifying the overpayment of \$900 to a patron." (Doc. 35 at 2) (emphasis added). Thus, nothing in the referee's findings support an inference of pretext.

Next, Plaintiff argues that Defendant did not follow its own progressive discipline policy. (Doc. 30 at 7-8). Plaintiff cites to *Zysk v. FFE Minerals USA Inc.*, 225 F. Supp. 2d 482 (E.D. Pa. 2001), which in turn cites to *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 (3rd Cir. 1983), to support his argument. In *Craig*, the Third Circuit affirmed a district court's finding of pretext when an employee "was never given a three-day suspension before discharge," and it was "the employer's practice was to make such a suspension *a mandatory predicate*

20

for the ultimate sanction of discharge." *Craig*, 721 F.2d at 80 (emphasis added).[9]  Here, in
contrast, Defendant's "Progressive Discipline Guidelines" explicitly state that Defendant
"does not employ mandatory or prescribed progressive steps of discipline and retains the
right to determine what measures would be appropriate under each circumstance." (Doc.
28-5 at 32).  Indeed, Plaintiff readily admits that "a serious infraction can always trump the
steps of progressive discipline." (Doc. 30 at 7-8).  Thus, Defendant's discipline guidelines
do not suggest that its stated reason for discharge was a pretext.

Plaintiff also makes reference to his good performance review received three weeks
prior to termination.  "Pretext is not established by virtue of the fact that an employee has
received some favorable comments in some categories or has, in the past, received some
good evaluations." *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 528 (3d Cir.
1992).  Specifically, "[a] plaintiff does not establish pretext by pointing to commendation of
the plaintiff in categories the defendant says it did not rely upon in making the employment
decision at issue." *Steward*, 231 F. App'x at 210.  "Rather, the factfinder must consider the
employee's performance in the categories that the employer deemed relevant to the
employment decision." *Id.*  Here, unlike cases where an employer's proffered reason for
termination is general poor performance, Defendant's stated reason for discharging Plaintiff
was a specific act of misconduct—attempting to cover up the fact that he authorized bets
over the table maximum and instructing a subordinate not to tell anyone.  This proffered

---

[9] *Zysk* merely cites to *Craig* for the proposition that failure to follow a progressive discipline policy
suggests pretext. *Zysk*, 225 F. Supp. 2d at 499.

reason, by its very nature, is not subject to attack on the basis of a prior favorable performance review because employee evaluations inherently cannot consider misconduct that is yet to occur. Indeed, nothing contained in Plaintiff's performance review indicates that Defendant's proffered reason for discharge is a pretext.

Finally, Plaintiff argues that there is no evidence that Defendant had a written policy prohibiting supervisors from changing betting limits. (Doc. 30 at 8-9). While it may be true that a plaintiff's claim should survive summary judgment if there is a genuine dispute of material fact as to the existence of a policy that formed the basis of a termination, such is not the case here because there is no dispute that such a policy did exist. According to Plaintiff's deposition testimony, "[w]e could not change table sides—signs, table limits unless they told us previously use your discretion." (Dep. of Rodney Laborde, Doc. 28-3 at 87). Plaintiff's supervisor, John Collins, attested to the fact that Plaintiff was not given the discretion to change the table limits on the night in question, (Decl. of John Collins, Doc. 28-9 at ¶ 9), and there is no evidence in the record that contradicts Collins' declaration. Thus, because there is no dispute of fact that Defendant had a policy against Floor Supervisors such as Plaintiff changing table signs and betting maximums absent a grant of discretion, the lack of a written policy is immaterial.

Accordingly, because Plaintiff cannot, as a matter of law, (1) establish a prima facie case of disability discrimination or (2) establish that Defendant's proffered reason for terminating Plaintiff's employment was a pretext for discrimination, the Court will grant

22

Defendant's Motion for Summary Judgment as it pertains to Plaintiff's ADA and PHRA claims.

## B. FMLA Claim

Next, Defendant seeks summary judgment on Plaintiff's FMLA claim. The FMLA provides up to twelve workweeks of unpaid leave during a twelve-month period for certain family reasons and any serious health condition that makes the employee unable to perform the functions of his position. 29 U.S.C. § 2612(a)(1). The FMLA also prohibits an employer from retaliating against an employee for invoking his rights under the Act. 29 U.S.C. § 2615(a)(2); *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) . "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein*, 691 F.3d at 301-02. "[A]n employee does not need to prove that invoking FMLA rights was the sole or most important factor upon which the employer acted." *Id.* at 301.

Courts have borrowed from employment discrimination law to assess claims of FMLA retaliation. Thus, a retaliation claim under the FMLA that is based on circumstantial evidence is analyzed under the *McDonnell Douglas* burden shifting framework. *Id.* at 302. As outlined above, under *McDonnell Douglas* Plaintiff must first establish a prima facie case of retaliation. "To do so, [he] must point to evidence in the record sufficient to create a genuine factual

dispute about each of the three elements of [his] retaliation claim: (a) invocation of an FMLA right, (b) termination, and (c) causation." *Id.* at 302. Once again, Defendant does not challenge the first two elements of Plaintiff's prima facie case. (Doc. 27 at 19). Instead, Defendant contends that Plaintiff cannot establish a causal connection between his FMLA leave requests and Defendant's decision to discharge him. (*Id.* at 19-20).

"To demonstrate a prima facie case of causation, [an employee] must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination." *Lichtenstein*, 691 F.3d at 307. "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality and defeat summary judgment.'" *Id.* (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). "Where the temporal proximity is not 'unusually suggestive,' [a court examines] whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *LeBoon*, 503 F.3d at 232 (quoting *Farrell*, 206 F.3d at 280).

Here, Plaintiff took FMLA leave on August 13, 2012. (Decl. of Carol Benginia, Doc. 28-15 at ¶ 14). Defendant suspended Plaintiff on August 14, 2012, and terminated his employment on August 16, 2012. (Decl. of Dennis Asselta, Doc. 28-2 at ¶ 39; Decl. of Frances Kneisc, Doc. 28-13 at ¶ 14). This temporal proximity is well within the realm of what the Third Circuit has found sufficient to establish a prima facie case. *See, e.g., Lichtenstein*, 691 F.3d at 307 (finding seven days unduly suggestive); *Shellenberger v.*

*Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (finding ten days unduly suggestive); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding two days unduly suggestive). Accordingly, the Court finds that Plaintiff has established a prima facie case of retaliation.

Because Plaintiff has established a prima facie case, the burden shifts to Defendant to proffer a legitimate, nondiscriminatory reason for terminating Plaintiff's employment. Just as with Plaintiff's ADA claim, Defendant has asserted that it terminated Plaintiff's employment because he tried to cover up his error in approving bets over a table maximum by changing the table sign and instructing a subordinate not to tell anyone. (Doc. 27 at 15-16, 20-21). As this is a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, the burden once again shifts to Plaintiff to point to evidence in the record indicating that Defendant's proffered reason is a pretext for retaliation. *See Fuentes,* 32 F.3d at 764.

Here, the timing of the events is also sufficient to carry Plaintiff's burden as to pretext. Specifically, the record reflects that on August 10, 2012, Mr. Collins told Mr. Asselta that Plaintiff had changed the table limit sign after approving excessive bets and asked the dealer not to tell anyone. (Decl. of John Collins, Doc. 28-9 at ¶¶ 20, 22-23). Mr. Asselta asserts that he discussed the matter with Mr. Tuthill and Mr. Tuthill decided to suspend Plaintiff and to seek his termination. (Decl. of Dennis Asselta, Doc. 28-2 at ¶ 38). The record, however, is unclear as to when this discussion took place or when Mr. Tuthill

decided to seek Plaintiff's termination. Plaintiff took FMLA leave on August 13, 2012.

(Decl. of Carol Benginia, Doc. 28-15 at ¶ 14). On August 14, 2012, Mr. Asselta directed Mr.

Hayes to suspend Plaintiff. (Decl. of Dennis Asselta, Doc. 28-2 at ¶ 39). On the same day,

Mr. Asselta and Mr. Tuthill sought approval from the Executive Director of Human

Resources, Ms. Kneisc, to terminate Plaintiff's employment. (*Id.* at ¶ 40; Decl. of Frances

Kneisc, Doc. 28-13 at ¶ 12). Ms. Kneisc approved Mr. Tuthill's recommendation and

Plaintiff's employment was terminated on August 16, 2012. (Decl. of Frances Kneisc, Doc.

28-13 at ¶¶ 13-14).

Because Plaintiff was terminated three days after he took FMLA leave for

misconduct that occurred three days prior to him taking FMLA leave, a reasonable jury

could conclude that the FMLA leave was causally connected to the termination. That is, a

reasonably jury could infer that the August 13, 2012, FMLA leave played a negative role in

the termination decision. Further, summary judgment is inappropriate because the record is

unclear as to whether Mr. Tuthill decided to recommend Plaintiff be discharged before or

after Plaintiff took the FMLA leave. If Mr. Tuthill was aware of Plaintiff's misconduct before

Plaintiff took his FMLA leave, but only made the decision to recommend Plaintiff's discharge

after Plaintiff engaged in the protected activity, a reasonable jury could infer that Mr. Tuthill

would not have made the recommendation had Plaintiff not taken the leave. *See*

*Lichtenstein*, 691 F.3d at 311-12 (reversing a grant of summary judgment when an

employer was aware of an employee's misconduct prior to the employee taking FMLA leave

but only decided to discharge the employee after the employee took the leave). Thus, there is enough evidence in the record for a reasonable jury to disbelieve Defendant's stated reason for terminating Plaintiff's employment.

Accordingly, the Court will deny Defendant's Motion for Summary Judgment with respect to Plaintiff's FMLA claim.[10] The Court feels compelled to note, however, that Plaintiff's counsel failed to point to the evidence in the record that ultimately overcame Defendant's Motion for Summary Judgment—that is, that Plaintiff took FMLA leave on August 13, 2012. Had the Court not examined the record and considered the importance of this fact sua sponte, judgment may have been entered against Plaintiff on this claim.

## C. Damages

Finally, Defendant argues that it is entitled to summary judgment on the question of front pay and back pay. (Doc. 27 at 21-22). That is, Defendant argues that it is undisputed that Plaintiff never made any attempt to mitigate his damages by applying for work after his termination—a fact that Defendant asserts is confirmed by Plaintiff's application for social

---

[10] The Court realizes that, on a superficial level, the Court's holdings with respect to Plaintiff's ADA claim and Plaintiff's FMLA claim could appear to contradict each other. This is not the case. As aptly stated in a similar case where summary judgment was granted on a discrimination claim but denied on a FMLA claim:

> [A]ge discrimination and FMLA retaliation claims require proof of different elements and inferences. It is therefore possible that, when examined in the appropriate context, a Plaintiff can meet his burden of establishing pretext for one claim but not another. Such is squarely the case here because of the unusually suggestive temporal proximity between Plaintiff's protected activity and the adverse employment decision, which applies only to Plaintiff's FMLA retaliation claim, but not to his age discrimination claims.

*DeCicco v. Mid-Atlantic Healthcare, LLC*, 275 F. Supp. 3d 546, 562 (E.D. Pa. 2017).

security disability benefits that he filed not long after his termination—and that the Court should thus rule that, as a matter of law, Plaintiff is not entitled to front pay or back pay with respect to his claim.[11]

An employer who violates the FMLA is liable for "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). Nevertheless, "[a]n individual who prevails on her FMLA claim also has a duty to mitigate her damages." *Cooper v. N.Y. State Nurses Ass'n*, 847 F. Supp. 2d 437, 452 (E.D.N.Y. 2012); *see also Miller v. AT & T Corp.*, 250 F.3d 820, 838 (4th Cir. 2001); Third Circuit Model Jury Instructions 10.4.1. In the context of Title VII, the Third Circuit has recognized that although the plaintiff has a duty to mitigate his or her damages, "the employer has the burden of proving a failure to mitigate." *Booker v. Taylor Milk Co., Inc.*, 64 F.3d 860, 864 (3d Cir. 1995). "To meet its burden, an employer must demonstrate that 1) substantially equivalent work was available, and 2) the . . . claimant did not exercise reasonable diligence to obtain the employment." *Id.* Alternatively, an employer may sustain "its burden on the mitigation issue by showing that the employee has withdrawn from the employment market." *Tubari Ltd., Inc. v. N.L.R.B.*, 959 F.2d 451, 454 (3d Cir. 1992); *see also Caufield v. Ctr. Area Sch. Dist.*, 133 F. App'x 4, 10-11 (3d Cir. 2005). "When an employer successfully proves a failure to mitigate, any back-pay award to an aggrieved

---

[11] Plaintiff's brief in opposition fails to address this argument. Instead, Plaintiff's brief contends that Defendant is arguing that Plaintiff's application for social security benefits estops Plaintiff from asserting that he was a "qualified individual" with respect to his former position. (Doc. 30 at 13-15). Contrary to Plaintiff's assertion, the Court views Defendant's arguments in this section as only pertaining to damages, not liability. This view is confirmed by Defendant's reply brief. (Doc. 34 at 15).

employee will be cut off or reduced beginning at the time of the employee's failure to mitigate and any front-pay award will be foreclosed." *Caufield*, 133 F. App'x at 11.

The Third Circuit has instructed that "it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (footnote ommited). Here, Plaintiff has admitted that he "has not held employment since his termination" and "has made no efforts seek new employment since the date of his termination." (Doc. 28 at ¶¶ 114-115; Doc. 29 at ¶¶ 114-115). From these undisputed facts, Defendant argues that Plaintiff has failed to mitigate his damages and is thus not entitled to back pay or front pay.[12] The Court, however, is unconvinced that these facts alone meet Defendant's burden such that it is entitled to summary judgment on the issue of back pay.

Even if it is undisputed that Plaintiff made no efforts to obtain employment after he was terminated, it does not necessarily follow that he is not entitled to any amount of back pay. An award of back pay is to be "reduced by any amounts the plaintiff actually earned or could have earned through the exercise of reasonable diligence." *Gallo v. John Powell Chevrolet, Inc.*, 779 F. Supp. 804, 813 (M.D. Pa. 1991); *see also* Third Circuit Model Jury Instructions 10.4.1. If, for example, all substantially equivalent work that was available

---

[12] Defendant also points to evidence in the record that Plaintiff applied for and was granted social security disability benefits. These facts, however, do not change the Court's analysis. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 801-07, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999).

around the time Plaintiff was terminated paid less than what Plaintiff earned in his position with Defendant, the difference between his prior salary and what he could have earned through the exercise of reasonable diligence would be greater than zero. Defendant has pointed to no undisputed evidence about the rates of pay of any substantially equivalent positions that may have been available to Plaintiff. Thus, the Court is not in a position to determine whether or not Plaintiff is entitled to an award of back pay.

The Court is also guided by the Third Circuit's rulings in *Booker v. Taylor Milk Company, Inc.*, 64 F.3d 860 (3d Cir. 1995), and *Caufield v. Center Area School District*, 133 F. App'x 4 (3d Cir. 2005), both of which rejected arguments that a failure to mitigate always forecloses awards of back pay. *See Booker*, 64 F.3d at 867 ("We conclude that the district court was correct as a matter of law in rejecting Defendant's 'no mitigation-no backpay' argument."); *Caufield*, 133 F. App'x at 12 ("[W]e cannot agree with the District Court that an appellant's failure to mitigate her monetary losses *ipso facto* bars all monetary relief in the form of back-pay."). While those cases involved claims brought under Title VII and the Age Discrimination in Employment Act, the Court sees no reason why a FMLA claim should receive different treatment.

Accordingly, the Court will deny Defendant's Motion for Summary Judgment with respect to damages.[13]

---

[13] The Court recognizes that Defendant moved for summary judgment with respect to front pay as well a back pay. "[U]nder the FMLA, front pay is an equitable remedy that must be determined by the court, both as to the availability of the remedy and the amount of any award." *Traxler v. Multnomah Cty.*, 596

## V. CONCLUSION

For the reasons outlined above, this Court will grant in part and deny in part

Defendant's Motion for Summary Judgment. A separate Order follows.

Robert D. Mariani
United States District Judge

---

F.3d 1007, 1011 (9th Cir. 2010) (collecting cases from the Fourth, Fifth, and Tenth Circuits); *see also Brown v. Nutrition Mgmt. Servs. Co.*, 370 F. App'x 267, 273 (3d Cir. 2010) (recognizing that, in an FMLA case, "[t]he law permits the District Court to make [the front pay] determination"). As such, the Court believes the more prudent course of action is to make the determination as to the availability of front pay, if needed, on a complete record after trial.